UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GELBER ALVARADO,
     *individually and on behalf of all others similarly
     situated*,

                                Plaintiff,          **REPORT AND**
                                                      **RECOMMENDATION**
         -against-                        20-CV-04005-HG-SJB

J.A VASQUEZ LANDSCAPING CORP.,
JOSE VASQUEZ,
     *as an individual*,

                                Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       On August 27, 2020, Plaintiff Gelber Alvarado ("Alvarado") brought this action on behalf of himself and a putative Fair Labor Standards Act ("FLSA") collective against J.A Vasquez Landscaping Corp. ("Vasquez Landscaping") and Jose Vasquez ("Vasquez") (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199. (Compl. dated Aug. 27, 2020 ("Compl."), Dkt. No. 1). On August 10, 2022, Alvarado moved for a default judgment against Defendants. (Notice of Mot. for Default J. dated Aug. 10, 2022, Dkt. No. 33). For the reasons stated below, it is respectfully recommended that the motion be granted as indicated herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

       Vasquez Landscaping is a New York domestic business corporation with its principal place of business in Inwood, New York. (Am. Compl. dated Mar. 1, 2022 ("Am. Compl."), Dkt. No. 23 ¶ 11). Vasquez is the owner of Vasquez Landscaping and has the final power and authority over all personnel decisions. (*Id*. ¶¶ 22, 24). Alvarado

was employed by Defendants from April 2019 to July 2020.  (*Id*. ¶ 7).  At Vasquez's direction, he performed primary duties as a gardener of commercial and residential premises, grass cutter, leaf blower, and debris cleaner, as well as miscellaneous duties. (*Id*. ¶ 8).  Alvarado alleges that he regularly worked six days each week for 11 hours per day, for a total of 66 hours each week.  (*Id*. ¶ 38).  Defendants paid Alvarado a flat weekly wage of $720 per week from April 2019 to December 2019 and $840 per week from January 2020 to July 2020.  (*Id*. ¶ 41).  Defendants did not pay Alvarado overtime wages, (Am. Compl. ¶¶ 43, 61–71), and made unlawful deductions from his wages, (*id*. ¶¶ 42, 47, 72–78), specifically, not paying him for his last week of work.  In addition, Alvarado alleges that Defendants failed to follow various state notice and record-keeping requirements.  (*Id*. ¶¶ 44–46, 79–84).

Alvarado commenced this action on August 27, 2020.  (Compl.).  He alleged five causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL; (3) unlawful wage deductions under NYLL § 193; (4) failure to provide a wage notice under NYLL § 195(1); and (5) failure to provide wage statements under NYLL § 195(3).  (*Id*. ¶¶ 42–65).

Vasquez Landscaping was served with a summons and a copy of the Complaint on September 9, 2020, (Summons Returned Executed filed Feb. 26, 2021, Dkt. No. 8), and Vasquez was served with a summons and the Complaint on the same day. (Summons Returned Executed filed Feb. 26, 2021, Dkt. No. 9).  Both were served by "delivering to, and leaving personally" the summons and Complaint with an "Ana Gonzalez" located at 1 Abrams Place, Inwood, New York 11096.  The Affidavit of Service for Vasquez Landscaping averred that Ana Gonzalez was "authorized to accept" on behalf of the Corporate Defendant.  (Summons Returned Executed filed Feb. 26, 2021,

Dkt. No. 8).  On March 1, 2021, the Court ordered Alvarado to show cause why service was proper on Vasquez Landscaping by showing why Ana Gonzalez was "authorized to accept service of process on behalf of the corporation under either New York law or Federal Rule 4(h)(1)(B)."  (Order to Show Cause dated Mar. 1, 2021).  In response, Alvarado sought, and was granted, leave to re-serve Vasquez Landscaping.  (Resp. to Order to Show Cause dated Mar. 2, 2021, Dkt. No. 11; Order dated Mar. 3, 2021).  Alvarado subsequently served Vasquez Landscaping on March 5, 2021 via the Office of the Secretary of State of New York.  (Summons Returned Executed filed May 20, 2021, Dkt. No. 12).

Defendants failed to appear, answer, or otherwise respond to the Complaint.  Alvarado sought a certificate of default against both Defendants, (Req. for Certificate of Default dated June 21, 2021, Dkt. No. 13), which the Clerk of Court granted.  (Clerk's Entry of Default dated June 30, 2021, Dkt. No. 14).  On August 23, 2021, Alvarado filed his first motion for default judgment against both Defendants.  (Notice of Mot. for Default J. dated Aug. 23, 2021, Dkt. No. 16).  The motion papers were mailed to both Defendants at the address 1 Abrams Place, Inwood, New York 11096.  (Affirmation of Service dated Aug. 24, 2021, Dkt. No. 19).

The Court issued an order to show cause on September 7, 2021 due to Alvarado's apparent failure to mail all the default judgment papers to Vasquez at his last known residence, as required by Local Civil Rule 55.2(c).  (Order to Show Cause dated Sept. 7, 2021).  In response, Alvarado notified the Court that the Abrams Place address was both the business address of Vasquez Landscaping as well as the residential address of Vasquez himself.  (Resp. to Order to Show Cause dated Sept. 14, 2021, Dkt. No. 20 at 1).  In support of this position, Alvarado noted that the summons and Complaint had been

3

served on Ana Gonzalez at this address, who, "upon information and belief [is] the wife of Jose Vasquez." (*Id.*). In addition, a Nassau County Land Records database search revealed Jose Vasquez to be a named party to the deed for the Abrams Place property. (*Id.* at 1, 3). A LexisNexis public records search also indicated that Vasquez is a "Current Owner[ ]/Resident[ ]" of 1 Abrams Place in Inwood. (*Id.* at 1, 5).

On February 9, 2022, the Court ordered Alvarado to show cause why it should not deny his motion for default judgment for failure to state a violation of FLSA. *Alvarado v. J.A. Vasquez Landscaping Corp.*, No. 20-CV-4005, 2022 WL 17775252, at *2 (E.D.N.Y. Feb. 9, 2022) ("Alvarado's Complaint fails to satisfy the [FLSA] coverage requirement because it does not allege either individual or enterprise coverage."). Alvarado subsequently informed the Court that he would withdraw his motion for default judgment and would file an Amended Complaint. (Resp. to Order to Show Cause dated Feb. 16, 2022, Dkt. No. 22).

Alvarado duly filed an Amended Complaint on March 1, 2022. (Am. Compl.). The Amended Complaint alleges the same five causes of action as the original Complaint. (*Id.* ¶¶ 61–84). Vasquez Landscaping was again served via the Office of the Secretary of State on March 10, 2022. (Summons Returned Executed filed Mar. 15, 2022, Dkt. No. 26). Personal service on Vasquez was attempted three times at his residence at three different times of day with no success. (Summons Returned Executed filed Apr. 6, 2022, Dkt. No. 27). On the third attempt the process server affixed the summons and Amended Complaint to the door of Vasquez's residence at 1 Abrams Place, Inwood and subsequently mailed copies of the papers to the same address via the United States Postal Service. (*Id.*).

Defendants again failed to appear, answer, or otherwise respond to the Amended Complaint.  The Clerk of Court entered a certificate of default against both Defendants on May 24, 2022.  (Clerk's Entry of Default, Dkt. No. 30).  On August 10, 2022, Alvarado renewed his motion for default judgment against both Defendants.  (Notice of Mot. for Default J. dated Aug. 10, 2022, Dkt. No. 33).

Alvarado seeks recovery of: (1) $52,282.29 in unpaid overtime wages and an additional $52,282.29 in liquidated damages on his overtime claims; (2) $720 in unpaid back wages; (3) $5,000 in penalties for not receiving required wage notices; and (4) $5,000 in penalties for not receiving required wage statements.  (Aff. of Avraham Scher dated Aug. 10, 2022 ("Scher Aff."), Dkt. No. 34 at 10; Mem. of Law in Supp. of Mot. dated Aug. 10, 2022 ("Mem."), Dkt. No. 35 at 26).

<u>DISCUSSION</u>

I.    <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against both Defendants on May 24, 2022.  (Clerk's Entry of Default, Dkt. No. 30).

The next question, before reaching liability or damages, is whether Defendants'

conduct is sufficient to warrant entry of a default judgment.  In determining whether to

enter a default judgment, the Court is guided by the same factors that apply to a motion

to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.

1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These

factors are "1) whether the defendant's default was willful; 2) whether defendant has a

meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting

party would suffer as a result of the denial of the motion for default judgment."  *Mason

Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2

(S.D.N.Y. Apr. 25, 2003).

First, Defendants' failure to respond to the Amended Complaint demonstrates

their default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No.

07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the

defendants' non-appearance and failure to respond "indicate willful conduct" and

granting plaintiff default judgment against them).  They were properly served with a

summons and the Amended Complaint.  (Summons Returned Executed filed Mar. 15,

2022, Dkt. No. 26; Summons Returned Executed filed Apr. 6, 2022, Dkt. No. 27).  The

motion for default judgment and supporting papers were also served via mail to the last

known business address of Vasquez Landscaping and last known residential address of

Vasquez.  (Aff. of Service dated Aug. 11, 2022, Dkt. No. 36).  Notwithstanding this notice

and service, Defendants did not respond to the Amended Complaint, did not appear,

and have not in any way attempted to defend themselves.

As to the second factor, the Court cannot conclude there is any meritorious

defense to Alvarado's allegations because Defendants did not appear and no defense has

been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1. Third, Alvarado would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.    <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see*

*also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).  "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As outlined below, the Court respectfully recommends that Defendants be found liable for violations of the overtime provisions of FLSA and NYLL, the unlawful deduction provisions of NYLL, and the notice and record-keeping requirements and wage statement provisions of the Wage Theft Prevention Act.

A.  <u>FLSA Coverage</u>

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).  *See generally Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985).  "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much.  Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D.

Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402, at *1 (Feb. 22, 2013); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963, at *1 (Sept. 23, 2021).

The Court finds that Alvarado has provided the factual detail necessary to support a finding that Defendants are engaged in interstate commerce and subject to FLSA.

### 1. Individual Coverage

Alvarado has not alleged that he was personally engaged in commerce or in the production of goods for commerce. *Blok Chocolatier LLC*, 2021 WL 4341103, at *3; *see also Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage [under FLSA].").  By failing to add sufficient additional evidence to the Amended Complaint to satisfy the "individual coverage" prong, Alvarado has conceded the Court's findings in its Order to Show Cause of February 9, 2022 that such coverage does not exist.  *J.A. Vasquez Landscaping Corp.*, 2022 WL 17775252, at *2–*3.

### 2. Enterprise Coverage

Enterprise coverage exists where an employer has (1) "employees engaged in commerce or in the production of goods for commerce"; and (2) an "annual gross volume of sales made or business done" equal to or greater than $500,000.  29 U.S.C. § 203(s)(1)(A).  On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an "enterprise engaged in commerce."  *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32

(E.D.N.Y. 2015) (citing *Garcia v. Badyna*, No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014)).

The Amended Complaint provides additional factual allegations regarding Defendants that provide the detail necessary to support a finding that Alvarado was protected by FLSA under the "enterprise coverage" prong.

Alvarado alleges that Vasquez Landscaping "is, at present, and has been, an enterprise engaged in interstate commerce." (Am. Compl. ¶ 13). Specifically, Vasquez Landscaping owns "two (2) or more large double-cabin corporate trucks . . . which J.A. Vasquez Landscaping regularly utilizes to transport all of its workers and day laborers, and its machinery, tools, equipment, and materials, and related debris, to and from each job site each and every day." (*Id.* ¶ 14). In addition, Vasquez Landscaping also owns two lawnmowers and two leaf blowers, "as well as various other items of expensive equipment, all of which the Plaintiff was required to work with personally." (*Id.* ¶ 15).

The handling of items that have "undoubtedly moved in interstate commerce" is sufficient to allege enterprise coverage. *See Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *see also Juarez v. Wheels Pizza Inc.*, No. 13-CV-261, 2015 WL 3971732, at *2 n.3 (S.D.N.Y. June 30, 2015) (finding plaintiff's allegations that he handled goods such as drinks and other supplies that were produced out-of-state to be sufficient to establish that his employer, a pizza stand, was engaged in interstate commerce); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) ("[I]t is inconceivable that none of

the trucks or other materials used by Plaintiffs in their line of work originated outside of New York.").

Finally, the Amended Complaint also states that Vasquez Landscaping had annual revenues of more than $500,000. (Am. Compl. ¶¶ 13, 19). This is sufficient on default. *See, e.g., Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015) (adopting report and recommendation) (finding plaintiffs' allegations "upon information and belief" that defendants' gross revenues were greater than $500,000 were sufficient to establish enterprise coverage).

For the foregoing reasons, the Court concludes that under the standards for enterprise coverage, Vasquez Landscaping is an employer subject to FLSA. And, thus, notwithstanding Alvarado's inability to establish individual coverage, Vasquez Landscaping is subject to FLSA. *See, e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120–21 (E.D.N.Y. 2011) (finding defendants liable on default judgment motion where plaintiffs failed to establish individual coverage but did establish enterprise coverage); *Shim*, 2009 WL 211367, at *2–*3 (same).

### 3.  Employment Relationship

Alvarado has also demonstrated that Vasquez is an "employer" under FLSA. Under FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An individual may be jointly and severally liable to an employee for unpaid wages under FLSA where the individual exercises "operational control" over that employee. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013) ("A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.").

To determine whether an individual is an "employer" under FLSA, courts look to the "economic reality" of the employment relationship. *Id.* at 104. That is, courts took to "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *see, e.g.*, *Irizarry*, 722 F.3d at 104–06 (applying *Carter*). "[T]he 'economic reality' test encompasses the totality of the circumstances," and no single factor is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Applying the four *Carter* factors, the Court finds that Vasquez was Alvarado's employer. Vasquez had the power to hire and fire employees (for example, Vasquez hired Alvarado and fired him). (Decl. of Gelber Alvarado dated Aug. 20, 2021 ("Alvarado Decl."), attached as Ex. H to Scher Aff., ¶¶ 3, 15). He "supervised and controlled" Alvarado's conditions of employment. Vasquez would meet Alvarado to give him his assignments, (*id.* ¶ 6), and "[t]hroughout each day," Vasquez would "supervise on the progress of [Alvarado's] work." (*Id.* ¶ 7). Alvarado would work additional days per week when Vasquez "told [him he] was required to." (*Id.* ¶ 8). Vasquez also controlled Alvarado's rate and method of pay: Alvarado "was paid every Saturday, by Mr. Vasquez personally, and always in Cash." (*Id.* ¶ 11). And Vasquez gave Alvarado the "same flat weekly salaries in these amounts regardless of the number of hours that [he] worked that such day or during that such week." (*Id.* ¶ 14). This is sufficient to establish Vasquez was Alvarado's employer under FLSA. *See, e.g.*, *Coley v. Vannguard Urb. Improvement Ass'n*, No. 12-CV-5565, 2018 WL 1513628, at *4 (E.D.N.Y. Mar. 29, 2018)

(finding executive director who admitted he "was authorized to hire, fire, discipline, assign employees, set work schedules, determine the rate and method of wage payments, establish classification of employees and maintain employment records" individually liable as employer under FLSA); *Gibson-Hawley v. USA Mgmt. LLC*, No. 17-CV-4346, 2018 WL 4691576, at *7 (E.D.N.Y. Sept. 14, 2018) (finding company owner and director who "controlled employee work schedules, payment method, and employment records" individually liable as employer under FLSA), *report and recommendation adopted*, 2018 WL 4689000, at *1 (Sept. 28, 2018).

Additionally, Alvarado is an employee covered by FLSA.

Any "individual employed by an employer" is protected under FLSA's minimum and overtime provisions. 29 U.S.C. § 203(e)(1). To determine whether an individual is "employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer. In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and alterations omitted). The Amended Complaint alleges that Alvarado was employed by Defendants, and there is no basis to infer that he was working for a business not owned and operated by someone else. (Am. Compl. ¶¶ 36–37). There is also no basis to infer that the employment relationship between Alvarado and Defendants is exempt from FLSA. *See* 29 U.S.C. § 203 (FLSA "definitions" and exemptions).

B. FLSA Overtime Claim

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not

less than one and one-half times the regular rate at which he is employed[.]'"[1] *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). A plaintiff "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 114). Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . . [,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89. Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible" and thereby survive a motion to dismiss. *Dejesus*, 726 F.3d at 90 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Amended Complaint states that Alvarado worked 66 hours each week for Defendants—approximately 11 hours a day, 6 days a week. (Am. Compl. ¶ 38). The Amended Complaint alleges that for the relevant time that Alvarado worked for Defendants, April 1, 2019 through July 31, 2020, Defendants paid him a flat sum of $720 per week from April 2019 until December 2019 and then $840 per week from January 2020 to July 2020. (*Id.* ¶ 41). Alvarado was not paid at a wage rate of time and

---

[1] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5. The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum. *Id.* § 778.5.

a half for his hours regularly worked in excess of 40 hours per week.  (*Id*. ¶ 43).

Alvarado's claims include the necessary factual allegations to state a FLSA overtime

violation.  Based on these undisputed allegations, the Court finds that Defendants are

liable for violations of FLSA's overtime provisions.

> C.  <u>NYLL Liability</u>

Alvarado also claims that Defendants violated NYLL for failure to pay overtime

wages.  The Court finds that Alvarado has properly alleged liability under NYLL.

A covered "employee" under NYLL is "any individual employed or permitted to

work by an employer in any occupation[.]"  NYLL § 651(5).  *See generally Gonzales v.*

*Gan Israel Pre-Sch.*, No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14,

2014).  There are a number of exemptions to that definition, none of which are

applicable.  *See* NYLL § 651(5).  The Amended Complaint alleges that Alvarado was an

employee of Defendants, (Am. Compl. ¶ 7), and that Defendants were an employer

under NYLL.  (*Id*. ¶ 35).  The Court accepts these factual allegations as true and

concludes that NYLL applies to Alvarado.

> 1.  <u>NYLL Overtime Claim</u>

Defendants failed to pay Alvarado the required overtime hourly rate under NYLL.

NYLL's overtime provision specifies that eight hours constitutes a "legal day's work,"

NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage

rate of one and one-half times the employee's regular rate . . . ."  12 N.Y. Comp. Codes R.

& Regs. tit. 12, § 142-2.2.  Alvarado asserts that he worked over 40 hours a week.

Specifically, he alleges that he worked from 7:00 A.M. to 6:00 P.M. six days a week for a

total of 66 hours each week.  (Am. Compl. ¶ 38).  The Amended Complaint alleges that

Defendants did not pay Alvarado the required overtime hourly wage. (*Id.* ¶ 43). The Court finds Defendants liable for unpaid overtime under NYLL.

2. <u>Wage Deduction Claim</u>

NYLL § 193 provides that "[n]o employer shall make any deduction from the wages of an employee," unless such deductions "(a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee[.]" The Amended Complaint alleges that Plaintiff was not paid during the last week of his employment. (Am. Compl. ¶ 47). Accepting this allegation as true, the Court finds Defendants liable for unlawful deductions of Alvarado's wages. *See, e.g., Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017, 2015 WL 1247102, at *7 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation) ("Plaintiffs have alleged that defendants made unlawful deductions of 10 percent of their salary from plaintiffs' bi weekly cash payment of wages. Plaintiffs maintain that the deduction of wages was not in accordance with the provision of any law or any rule or regulation; was not expressly authorized in writing by the plaintiffs; and was not made for their benefit. These allegations reflect a violation of Section 193 of the NYLL." (citation omitted)).

3. <u>Wage Theft Prevention Act Claims</u>

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip,

> meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)) (citing NYLL § 195(1)(a). The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee." NYLL § 195(1)(a). The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. *Id.* § 195(3).

The Amended Complaint alleges that Defendants never provided Alvarado with a wage notice in either English or Spanish (his primary language). (Am. Compl. ¶ 80). He was also never provided a wage statement with each payment as required. (*Id.* ¶¶ 44, 83). Accordingly, Alvarado has sufficiently established liability on these claims. *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555, at *2 (Apr. 12, 2018).

III.   <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report*

*and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002).  An employee may meet his burden of showing the amount and extent of his hours worked through his own recollection.  *See Pineda*, 831 F. Supp. at 674.  As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (holding that district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers" (citations omitted)).

A.  Overtime Wages

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week.  29 C.F.R. § 778.105; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Although Defendants are liable under both FLSA and NYLL for failing to pay Alvarado's overtime wages, Alvarado cannot recover unpaid overtime compensation under both statutes for any period of overlapping work.  *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012).  "If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief."  *Gamero v. Koodo Sushi Corp.*, No. 15-CV-2697, 2017 WL 4326116, at *11 (S.D.N.Y. Sept. 28, 2017) (alteration in original) (quotations omitted).

The Court recommends Alvarado be awarded recovery for unpaid overtime wages under FLSA.[2]  The Court may grant those damages which it can ascertain with reasonable certainty.  *Fermin,* 93 F. Supp. 3d at 30.  Alvarado's Amended Complaint alleges that he worked 11 hours a day, 6 days per week for a total of "approximately sixty-six (66) hours per week."  (Am. Compl. ¶ 38).  He was not provided with a one-hour meal break or other break during the normal course of the workday.  (*Id.* ¶ 39).

---

[2] While the typical practice is to calculate the award under both statutes and award whichever is higher, here, Alvarado only conducted calculations for one award for overtime wages, thereby conceding that the award is the same under both.  (Mem. at 22).

Alvarado worked for Defendants from April 1, 2019 to July 31, 2020. (*Id.* ¶ 36–37). Throughout this time he was paid a flat weekly wage. (*Id.* ¶ 41).

To calculate the sum of unpaid overtime, the Court must first calculate the regular rate of pay. For employees compensated on a "weekly salary basis" like Alvarado, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). "[T]here is a rebuttable presumption that a weekly salary covers 40 hours[.]" *Shen v. GJ Grp. USA Inc.*, No. 19-CV-2212, 2021 WL 8317105, at *9 (E.D.N.Y. Sept. 8, 2021) (quotations omitted), *report and recommendation adopted*, Order (Sept. 28, 2021). "The employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours." *Id.* (alteration in original) (quotations omitted). By virtue of their default, Defendants have failed to rebut the presumption that the weekly salary was for 40 hours of work. *See, e.g.*, *Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021) (applying the FLSA presumption on default); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (finding defendants failed to rebut the presumption because "the record [was] completely devoid of any evidence of an agreement or understanding between Plaintiffs and Defendants regarding what the weekly salary was intended to cover").

Between April 2019 and December 2019, Alvarado was paid a flat sum of $720 per week. (Am. Compl. ¶ 41). Starting in January 2020 until the end of his employment in July 2020, Alvarado was paid $840 per week. (*Id.*). Applying the presumption that these sums covered the first 40 hours of work, Alvarado's regular hourly rate started at

$18 per hour and in January 2020 it increased to $21 per hour.  Alvarado regularly

worked 66 hours per week, (*id.* ¶ 38), of which 26 hours constituted overtime.  The

overtime hourly rate is 1.5 times the regular hourly rate which results in Alvarado being

owed $27 for each overtime hour worked in 2019 and $31.50 for each overtime hour

worked in 2020.  The Court's calculations are set out below.

|  | **2019** | **2020** |
|---|---|---|
| Hours Per Week | 66 | 66 |
| Weekly Salary | $720 | $840 |
| FLSA Regular Hourly Rate | $18 | $21 |
| FLSA Overtime Rate | $27 | $31.50 |
| Weekly Overtime Hours | 26 | 26 |
| Weekly Overtime Wages Owed | $702 | $819 |
| Weeks Worked[3] | 39.29 | 30.43 |
| Total Overtime Wages Due | $27,581.58 | $24,922.17 |
| Total Overtime Wages Claimed | $27,478.29 | $24,804.00 |

Alvarado seeks a total of $52,282.29 in unpaid overtime wages.  (Mem. at 22;

Scher Aff. at 10; Labor Law Calculations, attached as Ex. G to Scher Aff.).  The requested

amount is less than the amount owed under the Court's calculations.  Because a plaintiff

need not seek all the damages to which he is entitled, the Court recommends that

Alvarado be awarded the requested amount of $52,282.29 in unpaid overtime damages

under FLSA.

---

[3] The number of weeks was calculated by summing the total complete weeks in
the applicable period plus the number of additional days divided by seven.  Between
April 1, 2019 and December 31, 2019 inclusive, there were 39 weeks and 2 days.
Between January 1, 2020 and July 31, 2020 inclusive, there were 30 weeks and 3 days.
Alvarado's figures for weeks worked in each period include one fewer day.  (*See* Labor
Law Calculations, attached as Ex. G to Scher Aff.).

B. <u>Liquidated Damages</u>

Alvarado seeks liquidated damages under both FLSA and NYLL. (Mem. at 22–24). Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, which amended . . . FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate . . . FLSA." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages. An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due (prior to this, liquidated damages were 25 percent). *Id.* § 663(1).

In light of the default by Defendants, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs.*, Inc., 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden

on the employer." (quotations and citation omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (Nov. 21, 2016). Therefore, the Court recommends that liquidated damages be awarded under FLSA.

Based on the recommendation that Alvarado be awarded $52,282.29 in unpaid overtime wages under FLSA, the Court recommends that Alvarado be awarded $52,282.29 in liquidated damages under FLSA.

C.  Wage Deduction Damages

Alvarado also alleges that he is owed $720 in unpaid wages for the last week of his employment with Defendants and is entitled to this recovery as an unlawful deduction.  (Am. Compl. ¶¶ 47, 72–78; Mem. at 27; Alvarado Decl. ¶ 15).  He explains that he was terminated immediately without pay for his last full week worked. (Alvarado Decl. ¶ 15).[4]  This amount of unpaid wages can be ascertained with reasonable certainty, and the Court therefore recommends that Alvarado be awarded an additional $720.

D.  Wage Theft Prevention Act Damages

Alvarado worked for Defendants for approximately 69 weeks.  For the wage notice claim, he is entitled to recover $50 per day up to a maximum of $5,000.  NYLL § 198(1-b).  For the wage statement claim, he is entitled to recover $250 per day up to a maximum of $5,000.  *Id.* § 198(1-d).  Because Alvarado never received a wage notice or

---

[4] Alvarado's allegation here is distinct from his claim for unpaid overtime wages. Alvarado asserts that Defendants simply failed to pay his wages and engaged in wage theft during this period in the amount alleged in the default judgment motion papers. Therefore, the Court may on default simply award the undisputed total amount withheld.

wage statements from Defendants, and because Alvarado worked for Defendants for more than 100 days, he is entitled to the statutory maximum of $5,000 under each provision. *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order (Mar. 23, 2021); *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020). Therefore, Alvarado should be awarded a total of $10,000 in Wage Theft Prevention Act damages.

     E.  Post-Judgment Interest

     Alvarado also requests post-judgment interest pursuant to 28 U.S.C. § 1961. (Am. Compl. Prayer for Relief at 10; Mem. at 27–28; Scher Aff. at 10).[5] The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. §

---

[5] The Memorandum of Law in support of default judgment, the Scher Affidavit, and the Proposed Order for default judgment each request a total amount to be awarded of $115,284.57 before post-judgment interest. This is one cent less than the sum of the individual amounts that the Court recommends awarding above. None of these papers includes pre-judgment interest in the calculation of the total amount requested of $115,284.57. While pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (adopting report and recommendation), "NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 48. One of the documents Alvarado has filed, (Labor Law Calculations, attached as Ex. G. to Scher Aff.), and the Amended Complaint, included a request for pre-judgment interest. (Am. Compl. Prayer for Relief at 10). However, because pre-judgment interest was not requested in the Memorandum of Law, Proposed Order, or Scher Affidavit, or the associated damages calculations contained therein, the Court concludes Alvarado has abandoned his request for such relief.

1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment. *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered against Defendants and Alvarado be awarded:

- $52,282.29 in unpaid overtime wages;

- $52,282.29 in liquidated damages;

- $720 in unpaid wages;

- $10,000 in Wage Theft Prevention Act damages;

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Alvarado is directed to serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.

SO ORDERED.

_/s/ Sanket J. Bulsara_ February 14, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York